NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEFFREY M. RIEDL and CHRISTINE E. RIEDL, | : : : : | |
| *Plaintiffs,* | : : | Civil Action No. 14-3925 |
| v. | : : | OPINION |
| JAMES H. MCCONCHIE, LINDA C. MCCONCHIE, and MCCONCHIE PROPERTIES, LLC, | : : : : : | May 8, 2015 |
| *Defendants*. | : : | |

**ARLEO**, UNITED STATES DISTRICT JUDGE.

Before this Court is the motion of Defendants James and Linda McConchie (the "Individual Defendants") and McConchie Properties, LLC ("McConchie Properties," and collectively, "Defendants") to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) [Dkt. No. 9]. Plaintiffs Jeffrey M. Riedl and Christine E. Riedl (collectively, "Plaintiffs") oppose this motion. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. Upon consideration of the parties' submissions in connection with this motion, and for the reasons set forth herein, Defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED.**

1

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the Individual Defendants' failure to repay two promissory notes (the "Notes") executed in favor of Plaintiffs and totaling $75,000 in principal. See generally Dkt. No. 1, Compl. ¶¶ 8-20. Plaintiffs are New Jersey residents and the Individual Defendants are Massachusetts residents. Id. ¶¶ 2-3. McConchie Properties is a limited liability company organized under the laws of Maine.[1] Id. ¶ 4.

The Individual Defendants first requested funds from Plaintiffs in or about March 2010, when they sought a $50,000 bridge loan to cover payments and other expenses related to the first mortgage (the "First Mortgage") on their Concord, Massachusetts, home (the "Concord Property") while attempting to sell same. Id. ¶ 8. Ultimately, Plaintiffs agreed to lend the Individual Defendants the funds, and Plaintiffs hired a Massachusetts attorney to draw up the promissory note and mortgage. See id. ¶ 9; Dkt. No. 9-1, Certification of James H. McConchie ¶ 14; Dkt. No. 16, Pls.' Joint Certification ¶ 15(c). The Individual Defendants then executed the first promissory note and mortgage in the amount of $50,000 in favor of Plaintiffs. Compl. ¶¶ 9-11. The first page of the Note reflects a date of May 3, 2010, and recites the location as Cambridge, Massachusetts. See Ex. A to Compl. at 12.[2] Mr. McConchie states—and a review of the Note confirms—that he and Mrs. McConchie actually executed the Note on May 6, 2010, in Maine and Massachusetts,

---

[1] Based on the allegations in the Complaint, it appears that McConchie Properties does not have any direct connection to the transactions at issue in this case. Rather, Mr. McConchie is a member/manager of the LLC, which owns a property in Maine on which Plaintiffs seek to impress a trust. See Am. Compl. ¶¶ 4, 30-38. There is no allegation that McConchie Properties was ever a party to any transaction with Plaintiffs. Indeed, Mr. McConchie and his daughter, Lindsay McConchie, each aver that McConchie Properties has never conducted business in or had any contact with New Jersey. J. McConchie Certification ¶ 37; Dkt. No. 9-3, Certification of Lindsay McConchie ¶ 9.

[2] Because Plaintiffs did not upload the Exhibits attached to the Complaint separately, the Court uses the ECF page numbers located at the top of each page.

2

respectively. Id.; J. McConchie Certification ¶ 15. The third page of the Note expressly states that it is to be governed by Massachusetts law. Ex. A to Compl. at 14. Plaintiffs allege that they provided the funds based on the Individual Defendants' "representations that reasonable efforts were being made to sell the [Concord Property] and that the first mortgage and real estate taxes on the property were current and not in default." Id. ¶ 11.

The Individual Defendants apparently failed to sell the Concord Property, and the First Mortgage was in default by approximately June 2011. Id. ¶ 12. The Individual Defendants then requested an additional $25,000 from Plaintiffs to cure the default. Id. Plaintiffs granted the request, and the Individual Defendants executed a second promissory note and mortgage in the amount of $25,000 on June 14, 2011, in Massachusetts. Id. ¶¶ 12-13; J. McConchie Certification ¶ 22. The second promissory note and mortgage are essentially identical to the first note and mortgage in all respects. Compare Exs. A & B to Compl. with Exs. C & D. Thereafter, the First Mortgage remained in default and the mortgage lender initiated a foreclosure action, which ultimately resulted in a judgment of foreclosure on November 26, 2012. Compl. ¶ 15. The property was subsequently sold at a foreclosure auction on February 6, 2013, and the sale proceeds failed to satisfy the amounts due under the First Mortgage and Plaintiffs' junior mortgages. Id. ¶ 16. Indeed, as junior mortgagees, Plaintiffs did not recover any of the foreclosure sale proceeds. Id. With their rights in the Concord Property thus extinguished, Plaintiffs instituted this action in an attempt to recover from the Individual Defendants personally.

Plaintiffs claim that the Individual Defendants misrepresented the extent of their efforts to sell the Concord Property and misused both the property and the loan proceeds. See id. ¶¶ 17-19. Plaintiffs allege that these misrepresentations induced them to make the loans to the Individual Defendants. Id. ¶ 20. In their Complaint, Plaintiffs allege four causes of action: (1) default on the

Notes; (2) fraud; (3) tortious breach of contract; and (4) impression of a trust on real property. Id. ¶¶ 21-38. Shortly after Plaintiffs filed suit, Defendants filed the instant motion, arguing that they lack sufficient minimum contacts with New Jersey to justify the exercise of specific jurisdiction.[3]

## II. DISCUSSION

### A. Applicable Law

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Although the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the early stages of litigation. Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). Rather, the plaintiff must "present[] a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Id. at 1223 (internal quotations and citations omitted). Once the plaintiff meets this burden, the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992) (citation omitted).

In general, a federal court sitting in diversity must engage in a two-step inquiry to determine whether it may properly exercise personal jurisdiction: (1) the court must determine whether the

---

[3] In opposing the motion to dismiss, Plaintiffs do not argue that Defendants are subject to general jurisdiction in New Jersey. For an individual defendant, "[t]he paradigm forum … is the individual's domicile, his home." JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc., No. 13-4110, 2014 WL 2050267, at *3 (D.N.J. May 19, 2014). Here, the Individual Defendants are not domiciled in New Jersey, and so general jurisdiction is lacking as to them. Similarly, McConchie Properties is not subject to general jurisdiction in New Jersey because it is not incorporated in New Jersey, nor is its principal place of business in New Jersey. See Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014).

4

relevant state long-arm statute permits the exercise of jurisdiction; and (2) if it does, the court must satisfy itself that the exercise of jurisdiction comports with the Due Process Clause of the Constitution. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir. 1998). Because New Jersey's long-arm statute extends the state's jurisdictional reach as far as the Constitution permits, this Court need only consider the propriety of exercising personal jurisdiction under the federal constitutional rubric. Id. at 259. See also Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 n.5 (3d Cir. 1990) (stating that "New Jersey courts look to federal law for interpretation of the limits on in personam jurisdiction").

There are two types of jurisdiction that a court can assert: specific or general. Spuglio v. Cabaret Lounge, 344 F. App'x 724, 725 (3d. Cir. 2009). Here, the Court focuses on specific jurisdiction. In determining whether specific jurisdiction exists over a given defendant, the Court must undertake a three-part inquiry. Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). First, the Court considers whether the defendant has "purposefully directed his activities at the forum." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). In order to satisfy this standard, there must be more than "minimal communication between the defendant and the plaintiff in the forum state." IMO Industries, 155 F.3d at 259 n.3. Second, the Court considers whether the plaintiff's claim "arise[s] out of or relate[s] to the defendant's activities in the forum state." Marten, 499 F.3d at 296 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). As this prong suggests, the Court's analysis is dependent upon "the relationship between the claims and contacts." Id. Third, even if the first two prongs are satisfied, the Court considers whether, in light of various additional factors, the exercise of personal jurisdiction over a particular defendant "comports with fair play and substantial justice." Id. (internal quotations and citation omitted).

**B.   Analysis**

   **1.  Jurisdiction Over the Individual Defendants**

Plaintiffs fail to establish that the Individual Defendants purposefully directed their activities at New Jersey.  The only connection between the Individual Defendants and New Jersey is that Plaintiff resided in New Jersey at the time the parties negotiated and executed the Notes.  It is well-established in this Circuit, however, that mere contracting with a resident of the forum state is insufficient, standing alone, to support a finding of personal jurisdiction.   See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 151 (3d Cir. 1996).  Instead, the reviewing court also considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  Id. (internal quotations omitted).

Taking those factors into consideration, the Court is convinced that the exercise of personal jurisdiction over the Individual Defendants would be inappropriate.  All of the relevant facts surrounding the Notes point not to New Jersey, but to Massachusetts or Maine.  Indeed, the following facts are undisputed in the record: (1) the Notes were executed in Massachusetts and/or Maine; (2) the Notes expressly state that they are governed by Massachusetts law; (3) Plaintiffs hired a Massachusetts attorney to draft all of the documents and consummate the transactions; (4) the Individual Defendants paid the Massachusetts attorney's fees; and (5) the Notes were secured by mortgages on Massachusetts real property. Dkt. No. 1, Compl. Ex. A at 14, Ex. B, Ex. C at 33, Ex. D; Dkt. No. 9-1, James McConchie Cert. ¶¶ 14-23; Dkt. No. 16, Pls.' Cert. ¶ 15(c).  In short, Plaintiffs fail to carry their burden of showing that the Individual Defendants have "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." Issacs v. Arizona Bd. of Regents, No. 14-3985,

2015 WL 1534362, at *3 (3d Cir. Apr. 7, 2015) (internal quotations omitted).  On the contrary, the facts demonstrate that both the Individual Defendants and Plaintiffs sought the benefits and protection of Massachusetts law.

Plaintiffs' reliance on the communications they sent from New Jersey, and the unilateral actions that they took in New Jersey, is also unavailing.  It has long been the law that the unilateral contacts of the plaintiff with the forum state are insufficient to confer jurisdiction over an out-of-state defendant.  See Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 32 (3d Cir. 1993).  Here, Plaintiffs variously rely on the facts that their "telephone calls, emails and correspondence, etc., on our side originated in and were communicated from New Jersey"; that the loan proceeds were paid to the Individual Defendants from New Jersey; and that Plaintiffs borrowed the $75,000 from their credit line with Morgan Stanley Smith Barney in New Jersey.  Pls.' Cert. ¶¶ 15(b)-(d) (emphasis added).  These allegations may very well be true, but they amount to nothing more than Plaintiffs' own unilateral contacts with New Jersey.  Such contacts are insufficient to justify the exercise of personal jurisdiction.

Furthermore, Plaintiffs fail to identify even a single telephone, electronic, or mail communication directed by the Individual Defendants into New Jersey. Even if Plaintiffs did identify such communications, however, the Court is not convinced that the exercise of personal jurisdiction would be appropriate, since the record indicates that the Individual Defendants would have no connection to New Jersey other than those communications.  See IMO Industries, 155 F.3d at 259 n.3 (more than minimal communication required to establish minimum contacts); Barrett v. Catacombs Press, 44 F. Supp. 2d 717, 729 (E.D. Pa. 1999) ("While telephone and mail contacts with residents of the forum state can be enough to subject a defendant to jurisdiction, such cases include other indications of a substantial connection."); see also  Carteret Savings Bank, 954

F.2d at 149 (minimum contacts established where defendant not only sent communications to New Jersey, but also traveled to the state); Carrabba v. Morgat, No. 12-6342, 2014 WL 229280, at *5 (D.N.J. Jan. 17, 2014) (defendant purposefully directed activities at New Jersey when he "repeatedly telephoned, emailed and faxed [plaintiff] in New Jersey, and visited [plaintiff in New Jersey]"). Indeed, Mr. McConchie avers that neither he nor his wife ever traveled to New Jersey in connection with the transactions at issue in this case. See McConchie Cert. ¶ 10. Plaintiffs do not challenge that assertion.

The Court is therefore satisfied that the Individual Defendants have not purposefully directed their activities at New Jersey. This Court accordingly lacks personal jurisdiction over the Individual Defendants.[4]

### 2. Jurisdiction Over McConchie Properties

As with the Individual Defendants, Plaintiffs have failed to demonstrate that McConchie Properties has purposefully directed its activities at New Jersey. Plaintiffs cannot point to a single fact establishing a connection between McConchie Properties and the state of New Jersey. Indeed,

---

[4] Finally, to the extent that Plaintiffs' opposition could be read as invoking the "effects test" set forth in Calder v. Jones, 465 U.S. 783 (1984), that argument is rejected. The "effects test" requires the plaintiff to show: "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." IMO Industries, 155 F.3d at 265-66. While Plaintiffs plead an intentional tort (fraud) and the brunt of the alleged harm was arguably suffered in New Jersey, Plaintiffs fail to establish the third prong of the test. In order to establish that a defendant expressly targeted the forum, "a plaintiff typically must show that the defendant made 'some type of entry into the forum state.'" Carter Ledyard & Milburn LLP v. Carrascosa, No. 07-3216, 2010 WL 4609501, at *5 (D.N.J. Nov. 1, 2010) (quoting IMO Industries, 155 F.3d at 265). As discussed above, Plaintiffs have not identified any actions taken by the Individual Defendants that would even suggest that they expressly intended to target New Jersey; rather, they merely allege that the Individual Defendants knew harm would occur there. Cf. IMO Industries, 155 F.3d at 267 (knowledge that a plaintiff is located in a particular forum, without more, "is insufficient to satisfy the targeting prong of the effects test"). Accordingly, the "effects test" is inapplicable.

the only jurisdictional facts in the Complaint are that McConchie Properties is a Maine LLC and Mr. McConchie is a member/manager of the LLC.  Compl. ¶ 4.  McConchie Properties is not mentioned again in the Complaint until the fourth cause of action for impression of a trust on real property.  See id. ¶¶ 30-38.  There, Plaintiffs identify McConchie Properties as the owner of a property in Maine.  Id. ¶ 31.  The balance of the allegations focus on representations that Mr. McConchie allegedly made regarding the potential refinancing of that property.  See id. ¶¶ 32-38; see also Pls. Cert. ¶ 15(g).  The allegations do not even imply that McConchie Properties purposefully directed any activities at New Jersey.[5]  Moreover, Mr. McConchie and his daughter emphatically state that McConchie Properties has never had any connection to New Jersey whatsoever.  J. McConchie Certification ¶ 37; L. McConchie Certification ¶ 9.  Put simply, Plaintiffs point to no evidence that McConchie Properties "purposefully directed [its] activities at" New Jersey.  Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).  As such, the Court declines to exercise jurisdiction over McConchie Properties.

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**.  An appropriate order will follow.

s/ *Madeline Cox Arleo*<br>
**MADELINE COX ARLEO**<br>
**UNITED STATES DISTRICT JUDGE**

---

[5] Plaintiffs' other references to McConchie Properties concern issues that are totally irrelevant to the dispute in this case and have no connection at all to New Jersey.  See Pls. Cert. ¶¶ 15(h), 16 (describing the formation of the LLC and claiming that McConchie Properties is in arrears on the Maine Cottage's taxes).

9